UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY CHIECKO<br><br>　　　　　　Plaintiff<br><br>v.<br><br>WINDSOR MARKETING GROUP, INC.<br>D/B/A WINDSOR MARKETING GROUP<br>AND KEVIN ARMATA,<br><br>　　　　　　Defendant | Civil Action No.: |

## COMPLAINT AND JURY DEMAND

### Parties

1. The Plaintiff, Mary Chiecko (hereinafter "Plaintiff") is an individual who resides at 320 Tremont Street, Springfield, Massachusetts.

2. The Defendant, Windsor Marketing Group, Inc. d/b/a Windsor Marketing Group (hereinafter "Defendant WMG") is a Connecticut corporation with a principal place of business located at 100 Marketing Drive, Suffield, Connecticut.  The Defendant WMG employees approximately 125 employees.

3. The Defendant, Kevin Armata ("Defendant Armata") is an individual who resides at 235 Fairhill Lane, Suffield, Connecticut.  Defendant Armata has a work address of 100 Marketing Street, Suffield, Connecticut.

### Jurisdiction

4. This Court has jurisdiction over the claims set forth herein, pursuant to 28 U.S.C. §§ 1331 and 1332 and otherwise.  There are federal questions of law.  Additionally, the

Plaintiff is diverse from all Defendants and the amount in controversy is in excess of $75,000.00.

## Facts

5. The Plaintiff is a female and of Irish descent.

6. The Plaintiff began her employment with the Defendant WMG on October 29, 2012 as an Account Executive. Throughout the course of her employment with the Defendant WMG the Plaintiff performed all her job responsibilities well.

7. The Plaintiff was continually sexually harassed throughout her employment with the Defendant WMG by Defendant Kevin Armata. Defendant Armata is the President and owner of the Defendant WMG, and was the Plaintiff's manager and supervisor.

8. On the Plaintiff's second day of employment she asked Defendant Armata what the training schedule would entail, and he responded back to this inquiry by saying "yes, we'll get to that, but for now I'm confident you can get by on your looks." When Defendant Armata made this comment he looked at the Plaintiff up and down and stared at her chest and smiled.

9. On November 6, 2012, Defendant Armata came up extremely close to the Plaintiff, put his hands on her shoulder and whispered into her ear "I was wondering who that hot Irish broad was from behind." This touching and sexual comment made the Plaintiff feel extremely uncomfortable and she recoiled upon being touched.

10. Defendant Armata would constantly look at the Plaintiff's chest, and stare at her in a provocative manner as if he was checking her out. He would also routinely make inappropriate sexual comments about other female employees in the Plaintiff's presence.

11. At various times throughout her employment with Defendant WMG the Plaintiff tried to object and resist to the Defendant Armata's conduct and harassment by asking Defendant Armata to stop or at times ignoring him.  She further complained to her direct supervisor about Defendant Armata's conduct.  The Defendant Armata did not respect the Plaintiff's requests to stop, and he became irritated and would ignore her.

12. The Plaintiff was so uncomfortable by Defendant Armata's conduct that she began questioning herself and even modified her clothing choices to try to avoid any inappropriate sexual comment to be made by Defendant Armata.  On some mornings, the Plaintiff would actually change from the outfit that she had chosen to wear out of fear that her originally selected outfit would prompt a sexual comment or leer from Defendant Armata.

13. During November 2012, Defendant Armata went to the Plaintiff's desk and said "Mary let's go now."  The Plaintiff was very hesitant about going with Defendant Armata.  They drove to his house and when the Plaintiff asked him what they were doing there he smiled and said "checking on his contractors."  The Plaintiff asked if she should stay in the car, and Defendant Armata insisted that she go in the house.  When they arrived at the home there were no contractors present.  The Plaintiff was so nervous by this whole incident that she was physically upset and sweating by the time she returned to the office.

14. Defendant Armata would constantly refer to the Plaintiff as the Irish drunk and ask the Plaintiff in front of her co-workers whether she was intoxicated over the weekend.  This made the Plaintiff feel embarrassed and uncomfortable.  He would also constantly make derogatory comments about Jewish people (calling them cheap) and African Americans (by using the term "nigger").

15. While driving to New York one time for work, Defendant Armata asked "do you have a boyfriend?" "when are you going to get married" and "why's a hot chick like you not married?"  This line of questioning about the Plaintiff's personal life made the Plaintiff extremely nervous and uncomfortable.

16. The Defendant WMG rented luxury buses to drive down to Patriots games as a perk to its clients.  Defendant Armata allowed the Plaintiff to bring her sister with her on the trip because her sister worked for Big Y (a client of WMG).  When Defendant Armata met the Plaintiff's sister he looked her up and down, and he called the Plaintiff's sister cute.  While on the bus, Defendant Armata said to the Plaintiff "why aren't you drinking Mary, you are a big booze bag."  The Plaintiff's sister later complained to the Plaintiff that Defendant Armata was making her very uncomfortable as he was starring and making comments throughout the event.

17. At the company's 70s themed Christmas party Defendant Armata came up to the Plaintiff from behind, again put his hands on her shoulders and whispered in her ears "you're looking great in those jeans especially from behind."

18. Additionally, Defendant Armata would constantly ask the Plaintiff about her weekend plans.  On one occasion he asked the Plaintiff if she would go to the Fort (a Springfield bar and restaurant) and meet him there on a Friday night.  Shortly thereafter the Defendant Armata actually put a business card sized card on the Plaintiff's desk that said "If you're going to say "NO" say it NOW before I spend $10 on drinks!"  Defendant Armata smiled as he walked away.  This made the Plaintiff extremely uncomfortable.

4

19. After only 5 ½ months of employment the Plaintiff became so uncomfortable at her job due to Defendant Armata's constant and pervasive actions that the Plaintiff was forced to seek professional help for her emotional distress.
20. The Plaintiff reported the sexual harassment to her direct supervisor, and her supervisor tried to keep the Plaintiff from having to interact with the Defendant Armata.  Despite her supervisor's efforts to separate the Plaintiff and Defendant Armata, the harassment continued.  The stress and anxiety that the Plaintiff experienced at her employment at Defendant WMG was so severe that she required a brief medical leave.  When the Plaintiff returned from her medical leave her bonus structure was changed without any explanation why.
21. The Plaintiff was constructively discharged from her employment.  The Plaintiff gave her two week notice to the Defendant WMG.  After she gave her notice, Defendant Armata further retaliated against her by ignoring her and refusing to speak to her.
22. The Plaintiff has suffered and continues to suffer from emotional distress as a result of Defendant Armata's intentional actions and Defendant WMG's actions and inactions.  The Plaintiff's emotional distress includes, but is not limited, anxiety, depression and nightmares about Defendant Armata.
23. Up until and including her last day of work, the Plaintiff continued to feel harassed, discriminated against and fearful that further retaliation would occur towards her.  The incidents described herein are not an exclusive list of the harassment, discrimination and retaliation that the Plaintiff experienced during her employment with the Defendant.
24. This is not an exhaustive list of the sexual harassment and discrimination that the Plaintiff experienced while she was employed by Defendant WMG.

25. The Plaintiff has satisfied the prerequisites for filing suit, and has received a Right to Sue letter from the Equal Employment Opportunity Commission dated October 6, 2014.

**Count I**
**(42 U.S.C. § 2000e—Unlawful Employment Practices—Title VII—Sexual Harassment and National Origin Discrimination)**
**(Plaintiff Mary Chiecko v. Defendant Windsor Marketing Group, Inc.)**

26. Plaintiff incorporates herein the previous allegations set forth in this Complaint.

27. Based on the actions of Defendant Armata as the manager, owner and agent of Defendant WMG and Defendant WMG's failure to respond to prevent the discriminatory conduct, the Plaintiff was adversely affected, discriminated against on the basis of her national origin, sexually harassed and forced to work in a hostile work environment.

28. Defendant WMG is vicariously liable for the actions of Defendant Armata as he was the manager and President of Defendant WMG and had supervisory powers over the Plaintiff. As more fully set forth above, the actions of Defendant Armata constitute sexual harassment and national origin discrimination.

29. Defendant WMG failed to take adequate steps to ensure that this harassment did not occur.

30. The Plaintiff was constructively discharged from her employment because the environment was so intolerable, based on Defendant Armata's continuous sexual harassment, Defendant Armata's lack of remorse for his conduct, and the hostile work environment created by Defendant WMG.

31. As a result of the above-described actions and inactions of Defendant WMG, the Plaintiff has suffered injuries, damages and emotional distress for which Defendant WMG is liable.

WHEREFORE, the Plaintiff respectfully requests judgment against the Defendant Windsor Marketing Group, Inc. and for all damages available pursuant to 42 U.S.C. § 2000e, including lost wages, emotional distress, punitive damages and attorneys' fees.

<u>**Count II**</u>
<u>**(42 U.S.C. § 2000e—Unlawful Employment Practices—Title VII—Retaliation / Constructive Discharge)**</u>
<u>**(Plaintiff Mary Chiecko v. Defendant Windsor Marketing Group, Inc.)**</u>

32. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

33. The Plaintiff was treated differently as to the terms and conditions of her employment based upon her reporting and/or resisting of sexual harassment and the sexually offensive hostile environment created by same. The Plaintiff was continuously sexually harassed despite her complaints and resistance of the advances by Defendant Armata.

34. The Plaintiff was retaliated against and constructively discharged from her employment based upon her reporting and resisting of said sexual harassment. The retaliation included, but was not limited to, increased instances and more severe sexual harassment after resisting (which included physical touching on the Plaintiff's shoulders).

35. This environment and the conditions imposed upon the Plaintiff related to and adversely affected the terms and conditions of her employment.

36. The Plaintiff was severely and adversely affected by the Defendant Armata's conduct and the failure of the Defendant to take reasonable steps to ensure that this discriminatory conduct, sexual harassment and retaliation would not continue.

WHEREFORE, the Plaintiff respectfully requests judgment against the Defendant Windsor Marketing Group, Inc. and for all damages available pursuant to 42 U.S.C. § 2000e, including lost wages, emotional distress, punitive damages and attorneys' fees.

**COUNT III**
**Intentional Infliction of Emotional Distress**
**(Plaintiff Mary Chiecko v. Kevin Armata)**

37. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

38. The actions of Defendant Armata, some of which are more fully set forth above, were intentional.

39. Defendant Armata intended to inflict emotional distress upon the Plaintiff and/or should have known that emotional distress was a likely result of his conduct.

40. The conduct of Defendant Armata was so extreme and outrageous that the Plaintiff suffered emotional distress and required formal treatment for her distress.

41. The emotional distress experienced by the Plaintiff was so severe that she was required to seek treatment from a licensed medical professional.

42. As a result of Defendant Armata's actions, the Plaintiff suffered damages, including emotional distress, for which Defendant Armata is liable.

WHEREFORE, the Plaintiff respectfully requests a judgment against Defendant Kevin Armata for all damages available under the law, including damages for her emotional distress.

**THE PLAINTIFF CLAIMS A JURY TRIAL WITH RESPECT TO ALL CLAIMS SO TRIABLE, PURSUANT TO FED. R. CIV. P. RULE 38 AND OTHERWISE.**

                                        Respectfully submitted,
                                        The Plaintiff,
                                        By her Attorneys,

Dated:  October 6, 2014

                                        __/s/ *Sarah A. Ornelas*_____
                                        Daniel J. O'Connell (ct25853)
                                        (e) doconnell@ocpllaw.com
                                        Sarah A. Ornelas (ct27825)
                                        (e) sornelas@ocpllaw.com
                                        O'Connell, Plumb & MacKinnon, P.C.
                                        75 Market Place
                                        Springfield, MA  01103
                                        Telephone: (413) 733-9111
                                        Facsimile: (413) 733-9888